UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:21-CR-17-DCR-MAS |
| v. ) | |
| ) | |
| BRYAN BROWN, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION AND ORDER**

A grand jury indicted Defendant Bryan Brown ("Brown") conspired with three counts of distribution. [DE 1]. The Court finds that Brown's extensive criminal history coupled with the seriousness of the instant charges require his detention.

**I.    RELEVANT FACTUAL, PROCEDRUAL, AND LEGAL BACKGROUND**

The Court conducted a detention hearing in this matter on April 12, 2022. [DE 22]. The Court previously found that the United States had a right to the hearing under 18 U.S.C. § 3142(f)(1)(C). [DE 17]. At the hearing, the United States sought Brown's detention based on risk of flight and danger. The Court afforded Brown and the United States all procedural rights provided by the Bail Reform Act ("BRA"). For the reasons described below, the BRA requires Brown's detention.

Because of the charges detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United*

*States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y],"

the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## II.     ANALYSIS

As a threshold matter, the Court finds that Brown has produced enough evidence to rebut the presumption as to both flight and danger. The Court finds that the United States proved by a preponderance of the evidence that no conditions will assure Brown's appearance at future court hearings and also succeeded in proving by clear and convincing evidence that Brown poses a risk of danger to the community that no conditions of release will adequately mitigate.

### A.     RISK OF FLIGHT

As noted, Brown overcame the presumption as to flight and/or nonappearance risk. Specifically, Brown presented proffer regarding his ability to return to his employment and the testimony of his mother, Erica Lear, and grandfather, Henry Benjamin Lear, Jr., at the hearing. Mr. Lear testified he lives near the residence where Brown would reside with his mother if released. Mr. Lear stated he has seen his grandson mature significantly since the time Brown has spent in prison over the past few years. Ms. Lear testified that Brown has lived with her off and on and would be welcome to live with her if released. She stated her friend is willing to employ Brown as a housekeeper if he is released. Like Mr. Lear, Ms. Lear described the maturity and growth she has observed in Brown over the past few years. Both Ms. Lear and Mr. Lear testified they would report any violations of release conditions to the United States Probation Office ("USPO"). These facts were sufficient to overcome his light presumption burden. *See* 18 U.S.C. § 3142(g)(3) (considering family and community ties, past conduct, and employment in assessing release propriety).

In response, the United States argued that Brown is a flight or nonappearance risk, and that no conditions can reasonably target those risks. The United States pointed out Brown's history of failing to appear for court on two occasions. Moreover, Brown has convictions for fleeing or

4

evading police as well as violations of probation.[2]  The United States further noted that although Mr. Lear and Ms. Lear testified that they would assist in ensuring Brown abided by conditions and appeared at all future court hearings, Brown was living with Ms. Lear at the time he committed the state and federal offenses for which he is currently indicted, implying they do not have the influence and supervision over him that they claim to.

Weighing the facts, the Court concludes the United States proved that Brown is a risk of nonappearance, though this is a close case.  The Court is convinced by Brown's prior record, including failing to appear for a sentencing in a drug case, that he poses a risk of nonappearance in this case despite his family's support and commitment to seeing him succeed.  Unfortunately, his risk of nonappearance cannot be mitigated by conditions, as evidenced by Brown's history of repeatedly violating his probation and parole.  Thus, the Court finds that flight-based detention of Brown is appropriate.

B.     **RISK OF DANGER**

Though the Court has found pretrial detention is appropriate based on the risk of nonappearance that Brown poses, the Court will analyze danger-based detention in the interest of thoroughness.  The Court finds that conditions would not effectively address the appreciable danger of continued trafficking activity and further finds that the United States has shown by clear and convincing evidence that danger-based detention is required.

1.     **Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance[.]" 18 U.S.C. § 3142(g)(1). The nature of the offense—a presumption drug trafficking case—favors Brown's detention.

---

[2] Brown's criminal record reflects prior violations of probation or parole in 2015 and twice in 2017 (though the second violation was dismissed).

The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of drug offenses. Distribution of heroin and fentanyl are exceptionally dangerous offenses. And as discussed, the detention presumption stemming from them "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)). The presumption persists as a pro-detention concern.

### 2. Weight of the Dangerousness Evidence

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The Court engages no elemental assessment of the alleged offenses and makes no "pretrial determination of guilt[.]" *Id.* (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)).

The Court does, however, examine the intersection of the factors in § 3142(g)(1) and (g)(3). The instant allegations, if true, appear to be a continuation of Brown's record of nearly continuous criminal activity. The nature of the current allegations, as explained above, considered with Brown's history detailed below, indicate the weight of his dangerousness is heavy. This factor favors detention.

### 3. History and Characteristics

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3)(directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

Brown is in good physical and mental condition. [Pretrial Services Report at 2]. He has little previous employment history other than a five-month stint with a cleaning service. [Pretrial Services Report at 2]. Brown admitted to using heroin daily until his most recent incarceration two years ago. [Pretrial Services Report at 3]. Though Brown's grandfather and mother testified on his behalf, the Brown has few positive characteristics in his background that favor release.

Brown criminal history is particularly concerning. In 2014, Brown was charged with two counts of attempted murder that were ultimately amended down to first degree wanton endangerment. [Pretrial Services Report at 4]. Between 2015 and 2017, Brown was convicted of carrying a concealed deadly weapon, possession of heroin, trafficking in heroin, trafficking in cocaine, being a convicted felon in possession of a firearm, and twice convicted of fleeing or evading the police. [Pretrial Services Report at 3-6]. The instant charges arose from incidents in October 2020. Brown was initial arrested on state charges related to these incidents. Though those state charges were dismissed in January 2022, Brown incurred another charge for possession of a controlled substance in July 2021, while he was on release for the October 2022 charges. [Pretrial Services Report at 6-7]. This factor weighs decidedly in favor of detention.

4. **Nature and Seriousness of the Danger Risk**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The nature of the potential danger associated with the continuance of this conspiracy as a whole is grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"). The United States

7

argued Brown poses a risk to the community if released because his past indicates he is likely to continue criminal activity if released.

Brown's criminal record supports the government's contention. *See United States v. Beard*, 528 F.Supp.3d 764, 774–75 (N.D. Ohio, 2021) (Finding that detention is appropriate where "the record establishes that [the defendant] has not complied with any other conditions of supervision, whether post-release control or pretrial release on bond in State court and there is no reason to believe things will be different now" and the record also reflects low-level criminal enterprise activity.); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases). As outlined above, Brown has allegedly committed drug offenses in the past year. State bond conditions apparently did not discourage his alleged conduct. If past conduct is predictive of future behavior, Brown has proven to the Court that he will not reform his behavior if released. The nature and seriousness of the danger to the community if Brown is released includes narcotics trafficking and a history of firearms charges. The risks of releasing Brown are too great, and Brown's own history proves those risks cannot be mitigated with bond conditions.

### III.   CONCLUSION

For the stated reasons, the Court finds that the United States proved that Brown is an irremediable flight risk based on facts supported by preponderance of the evidence and proved by clear and convincing evidence that he poses a risk of danger to the community that cannot be mitigated with conditions. Therefore, the Bail Reform Act mandates detention. The Court has assessed the record, the testimony at the hearing, contemplated the risks, evaluated conditions, and

determined that there exist no conditions that will reasonably assure that the safety of others or the community if Brown is released. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Brown.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 18th day of April, 2022.

